1

2

3              **UNITED STATES DISTRICT COURT**

4                  **DISTRICT OF OREGON**

5                  **PORTLAND DIVISION**

6

7  JENNIE BRICKER,                    )
                                      )
8              Plaintiff,             )      No. 03:12-cv-01868-HU
                                      )
9  vs.                                )
                                      )
10 TRI-MET, an Oregon municipal       )   **FINDINGS & RECOMMENDATION**
   corporation,                       )      **ON MOTION TO DISMISS**
11                                    )
               Defendant.             )
12
13        _____

14

15

16 Charles J. Paternoster
   Parsons Farnell & Grein, LLP
17 1030 SW Morrison Street
   Portland, OR 97205
18
               Attorney for Plaintiff
19

20

21 Erik Van Hagen
   Deputy General Counsel
22 TriMet
   4012 SE 17th Avenue
23 Portland, OR 97202

24             Attorney for Defendant

25

26

27

28

1 - FINDINGS & RECOMMENDATIONS

1  HUBEL, Magistrate Judge:

2      The plaintiff Jennie Bricker brings this action against the

3  Tri-County Metropolitan Transportation District of Oregon, a

4  municipal corporation commonly known as "TriMet," for declaratory

5  and injunctive relief, and nominal damages, arising from events

6  that began on October 5, 2011.  The case is before the court on

7  TriMet's Motion to Dismiss.  Dkt. #15.  Bricker has opposed the

8  motion, Dkt. #17, and TriMet has replied, Dkt. #19.  The court

9  heard oral argument on the motion on February 21, 2113.  The motion

10 is fully briefed, and the undersigned submits these findings and

11 recommendations pursuant to 28 U.S.C. § 636(b)(1)(B).

12

13                  ***STANDARDS FOR MOTIONS TO DISMISS***

14      Chief Judge Aiken of this court set forth the standard for the

15 court's consideration of a motion to dismiss in *Gambee v.*

16 *Cornelius*, No. 10-CV-6265-AA, 2011 WL 1311782 (D. Or. Apr. 1, 2011)

17 (Aiken, C.J.).  Judge Aiken observed:

18          Under Fed. R. Civ. P. 12(b)(6), a com-
19      plaint is construed in favor of the plaintiff,
        and its factual allegations are taken as true.
20      *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d
        992, 998 (9th Cir. 2010).  "[F]or a complaint
21      to survive a motion to dismiss, the non-
        conclusory 'factual content,' and reasonable
22      inferences from that content, must be
        plausibly suggestive of a claim entitling the
23      plaintiff to relief."  *Moss v. United States*
        *Secret Serv.*, 572 F.3d 962, 969 (9th Cir.
24      2009).  "A claim has facial plausibility when
        the plaintiff pleads factual content that
25      allows the court to draw the reasonable
        inference that the defendant is liable for the
26      misconduct alleged."  *Ashcroft v. Iqbal*, 129
        S. Ct. 1937, 1949 (2009).  "[O]nce a claim has
27      been stated adequately, it may be supported by
        showing any set of facts consistent with the
28      allegations in the complaint."  *Bell Atlantic*
        *Corp. v. Twombly*, 550 U.S. 544, 563[, 127

2 - FINDINGS & RECOMMENDATIONS

1    S. Ct. 1955, 1969, 167 L. Ed. 2d 929] (2007).
     "[G]enerally the scope of review on a motion
2    to dismiss for failure to state a claim is
     limited to the Complaint." *Daniels-Hall*, 629
3    F.3d at 998.

4  *Id.* at *2.

5

6               ***FACTUAL AND PROCEDURAL BACKGROUND***

7        The events leading to this action were summarized by City of
8  Portland Hearings Officer Kimberly M. Graves ("HO Graves"), in
9  Findings of Fact following a hearing held on November 8, 2011. *See*
10 Dkt. #1-5, ECF pp. 6-9.   Graves's findings indicate that on
11 October 5, 2011, TriMet Inspector Larry Boltjes "was conducting
12 routine fare inspections at the Sunset Transit Center." *Id.*, ECF
13 p. 6.  Boltjes testified "he was on the eastbound platform dealing
14 with an uncooperative subject when his attention was drawn to
15 Ms. Bricker." *Id.*  According to Boltjes, the person with whom he
16 was dealing was yelling loudly, calling Boltjes names and using
17 abusive language.   Boltjes "repeatedly told the uncooperative
18 subject that he did not have a right to yell and be abusive on
19 TriMet property. . . .  [T]he subject responded by stating that it
20 was his 1st Amendment right to yell and be loud." *Id.*, ECF p. 7.

21       During this exchange, Bricker was standing about 30 feet away,
22 or "halfway down the platform," from Boltjes and the subject. *Id.*
23 When Bricker, who is an attorney, heard Boltjes tell the subject he
24 did not have any first amendment rights on the TriMet platform,
25 Bricker raised her voice enough for Boltjes to hear her, to express
26 her opinion about the matter.  Boltjes told Bricker "it was not her
27 place to interject into the matter that was taking place," but
28 according to Boltjes, Bricker "would not stop yelling." *Id.*

3 - FINDINGS & RECOMMENDATIONS

1  Boltjes testified that Bricker's "yelling was drawing the attention
2  of all passengers on both platforms, and . . . Bricker was trying
3  to get other people involved in the incident taking place." *Id.*
4  Bricker contradicted Boltjes's version of the events, testifying
5  she was not yelling or trying to get other people involved, and
6  "she was not paying attention to the other people on the platform."
7  *Id.* Bricker "stated that she had only one goal and that goal was
8  to 'express [her] opinion, and [her] opinion was critical.'" *Id.*
9  According to Bricker, she told Boltjes "she disagreed with his
10 statement, and that all individuals had protected First Amendment
11 rights of free expression on the platform, which was a public place
12 and public forum." Dkt. #1-13, ¶ 6.

13     Boltjes left the uncooperative subject, who ran off, and
14 approached Bricker, "claiming that she was disturbing everyone on
15 the platform." *Id.*, ¶ 7. Boltjes left the platform for a few
16 minutes, and then returned. According to Bricker, when the Max
17 train arrived, Boltjes would not allow Bricker to board the train,
18 and he issued a citation and Notice of Exclusion to Bricker for
19 making "excessive noise" in violation of TriMet Code ("TMC")
20 § 28.15(A)(13). *Id.*, ¶ 10. That code section provides as follows:

21            Excessive Noise: No person shall:
             (a)  Make excessive or unnecessary noise,
22                including boisterous and unreasonably
                  loud conduct, within any District Vehicle
23                or District Station with the intent to
                  cause inconvenience, annoyance or alarm
24                to the public, District personnel, or a
                  peace officer, or with a reckless disre-
25                gard to the risk thereof[.]

26 TMC § 28.15(A)(13). "District Station" is defined as "a 'transit
27 station', 'transit center', bus passenger shelter and awnings, and
28 a light rail or commuter rail passenger platform including

4 - FINDINGS & RECOMMENDATIONS

1  shelters, awnings, adjoining stairways, ramps and elevators." TMC
2  § 28.10(D).

3      Bricker requested a hearing with the City of Portland Hearings
4  Office, and her 30-day exclusion was stayed pending the hearing.
5  A hearing was held on November 8, 2011. At the hearing, Bricker
6  argued, among other things, that her conduct was protected by the
7  United States and Oregon Constitutions. She stated her belief that
8  "her speech was annoying to Inspector Boltjes, but not because of
9  the conduct and instead because of the content of the speech."
10 Dkt. #1-5, ECF p. 7. She argued TMC § 28.15(A)(13) was unconstitu-
11 tional as applied to her, contending "TriMet cannot regulate her
12 speech based on content, or unreasonably regulate the volume of her
13 speech without regard to content." *Id.*

14      HO Graves analyzed Bricker's argument under the framework set
15 out by the Oregon Supreme Court in *State v. Robertson*, 293 Or. 402,
16 649 P.2d 569 (1982). HO Graves found that TMC § 28.15(A)(13) falls
17 into the category of laws that focus on the forbidden effects of
18 speech, without referring to the means of expression used to
19 achieve those effects. HO Graves noted the *Robertson* court held,
20 regarding these types of laws, "'If [a] statute [is] directed only
21 against causing the forbidden effects, a person accused of causing
22 such effects by language or gestures would be left to assert (apart
23 from a vagueness claim) that the statute could not constitutionally
24 be applied to [her] particular words or other expression, not that
25 it was drawn and enacted contrary to Art. 1, Sec. 8.'" Dkt. #1-5,
26 ECF p. 8 (quoting *Robertson*, 293 Or. at 417, 649 P.2d at 579). HO
27 Graves found the code section at issue "is directed at the
28 forbidden effect of excessively loud noise, and does not refer to

5 - FINDINGS & RECOMMENDATIONS

or restrict any particular means by which such noise is created. The question remaining is then whether [the code section] was unconstitutionally applied to Ms. Bricker's conduct[,]" *id.*, the same issue Bricker raises in this case.

HO Graves found that during the heated interaction between Boltjes and the uncooperative subject, "a number of people on the platform were commenting on the contact as it was occurring." *Id.* HO Graves found Bricker also began commenting on the interaction, and "Bricker's comments were at such a raised volume that they were distracting to Inspector Boltjes as he attempted to perform his duties as a TriMet Inspector." *Id.* HO Graves further found Boltjes was concerned with "the volume of Ms. Bricker's statements, and not the content of the statements," noting that even Bricker, herself, had stated Boltjes "was concerned with her 'disturbing everyone on the platform[.]'" *Id.* HO Graves concluded that TMC § 28.15(A)(13) was not unconstitutional as applied to Bricker, under either the First Amendment to the United States Constitution, or Article 1, Section 8, of the Oregon Constitution. *Id.*

As a result, HO Graves found the Notice of Exclusion issued to Bricker was valid, and the exclusion would run from November 30 to December 30, 2011, at 5:00 p.m.  Dkt. #1-5, ECF pp. 8-9.

### *PETITION FOR WRIT OF REVIEW*

On December 1, 2011, Bricker filed a Petition for Writ of Review in the Circuit Court of Multnomah County, pursuant to the procedure set forth in ORS §§ 34.010 to 34.100.  In Oregon, "the writ of review is substantially the common-law writ of certiorari." *Bechtold v. Wilson*, 182 Or. 360, 378, 186 P.2d 525, 532 (1947).

6 - FINDINGS & RECOMMENDATIONS

1   With certain exceptions not relevant here, the review procedure
2   provides the exclusive means by which "any party to any process or
3   proceeding before any inferior court, officer, or tribunal may have
4   the decision or determination thereof reviewed for errors[.]" ORS
5   § 34.020.   In her brief opposing TriMet's motion to dismiss,
6   Bricker expressly "does not dispute that a Writ of Review is the
7   exclusive remedy for challenging a quasi-judicial proceeding such
8   as the hearing officer's decision with respect to the Exclusion in
9   this instance.   In other words, the writ . . . is the only means
10  for challenging the hearing officer's decision to uphold the
11  Exclusion notice against [Bricker]."  Dkt. #17, p. 12.

12      A petition for writ of review must:

13      (1)  describe the decision or determination to be reviewed
14          "with convenient certainty, and setting forth the errors
15          alleged to have been committed therein";

16      (2)  be signed by the petitioner or the petitioner's attorney,
17          with an appropriate verification as described in the statute;
18          and

19      (3)  be filed "within 60 days from the date of the decision or
20          determination sought to be reviewed."

21  ORS § 34.030.  It is undisputed that Bricker's petition met all of
22  these requirements.

23      Although ORS § 34.030 states that if a petition meets all of
24  the requirements listed above, the writ "**shall be** allowed"
25  (emphasis added), subsequent sections impose additional require-
26  ments before the writ may be allowed.  ORS § 34.040 lists the types
27  of errors that are reviewable; i.e., the court, tribunal, or agency
28  issuing the decision to be reviewed "(a) [e]xceeded its jurisdic-

7 - FINDINGS & RECOMMENDATIONS

1  tion; (b) [f]ailed to follow the procedure applicable to the matter
2  before it; (c) [m]ade a finding or order not supported by substan-
3  tial evidence in the whole record; (d) [i]mproperly construed the
4  applicable law; or (e) [r]endered a decision that is unconsti-
5  tutional." ORS § 34.040(1).  Bricker claims criteria (c), (d), and
6  (e) apply to HO Graves's decision.  Dkt. #1-1, ¶ 6; Dkt. #1-13, ECF
7  p. 7, ¶ 34.

8       Before the writ is allowed, the petitioner must give an under-
9  taking in the amount of $100, or deposit cash in lieu thereof, to
10  cover costs that may be awarded to the defendant in connection with
11  the review.   ORS § 34.050.   Bricker deposited $100 with the
12  Multnomah County Circuit Court in lieu of an undertaking.  *See* Dkt.
13  #1-2; Dkt. #1-13, ECF p. 27.

14      When an order is entered allowing the writ, the clerk of court
15  must issue the writ.  ORS § 34.080 ("Upon the filing of the order
16  allowing the writ, and the petition and undertaking of the
17  [petitioner], the clerk shall issue the writ, as ordered.").  The
18  writ itself directs the issuer of the challenged decision, or
19  custodian of the records or proceedings, to return the writ by a
20  specified date "with a certified copy of the record or proceedings
21  in question annexed thereto, so that the same may be reviewed by
22  the circuit court."  ORS § 34.060.

23      No statute, procedural rule, or Multnomah County Circuit Court
24  rule directs the petitioner to submit a proposed form of either the
25  order allowing the writ, or the writ itself.   However, as a
26  practical matter, proposed forms of the order and writ usually
27  accompany the petition and undertaking.  *Cf., generally, Oregon*
28  *Civil Pleading & Prac. Deskbook* § 39.2-10.  Although not part of

8 - FINDINGS & RECOMMENDATIONS

1 the record before this court, the parties agree that when Bricker
2 filed her petition, she also submitted a proposed order allowing
3 the Writ of Review. *See* Dkt. #1-6, ECF p. 4 (TriMet's Motion to
4 Dismiss in the Multnomah County case); Dkt. #1-13, ECF p. 4, ¶ 16
5 (Bricker's Complaint and Amended Writ of Review in the Multnomah
6 County case). Bricker claims the Honorable Jean Kerr Maurer of the
7 Circuit Court of Multnomah County ordered issuance of the Writ of
8 Review on December 1, 2011, and this order was "entered on
9 December 5, 2011." Dkt. #1-13, ECF pp. 4-5, ¶¶ 17 & 21. This
10 order also does not appear in the record before this court.
11 However, Bricker does not allege that she also submitted a proposed
12 form of the Writ for issuance at the time she filed her petition.
13 What does appear in the record before this court is the Writ of
14 Review entered by the Circuit Court of Multnomah County more than
15 seven months later, on July 13, 2012. Dkt. #1-5, p. 1. The Writ
16 indicates it was issued "[b]y virtue of an order of the above-
17 entitled court, made and entered on December 5, 2011. . . ." *Id.*
18 (emphasis added). It is undisputed that TriMet was not served with
19 a Writ of Review in this matter prior to issuance of the writ on
20 July 13, 2012.

21     On December 1, 2011, after filing her petition, Bricker sent
22 an e-mail to Jana Toran at TriMet, attaching a courtesy copy of "a
23 motion and proposed order, which [Bricker] intend[ed] to present at
24 ex parte tomorrow, December 2, 2011, at 1:30 pm, at the Multnomah
25 County Circuit Court." Dkt. #1-13, ECF p. 28. Toran responded as
26 follows:

27                Thanks for the courtesy. I've assigned this
               case to Erik Van Hagen in our office. I [am]
28                not aware that the court has issued the writ

9 - FINDINGS & RECOMMENDATIONS

1
2
3
        yet.  As for tomorrow, please inform the court
that we have not been served with the writ and
that at this time we are unable to respond to
your motion.

4  *Id.*  On December 2, 2011, Bricker did, indeed, present an *ex parte*
5  Motion for Stay to the Multnomah County Circuit Court.   In her
6  motion, Bricker requested a stay of her exclusion during the
7  pendency of the court's review of her petition.  Dkt. #1-13, ECF
8  p. 30.   Bricker also submitted a Proposed Order Granting Peti-
9  tioner's Motion for Stay.  Dkt. #1-13, ECF p. 29.   According to
10 Bricker, the stay order was entered by the Multnomah County Circuit
11 Court on December 2, 2011.  Dkt. #1-13, ECF p. 5; Dkt. #17, pp. 3-
12 4.  No copy of the signed order appears in the record before this
13 court.

14     After  some  procedural  delays,  TriMet  filed  a  motion  on
15 August 9, 2012, seeking dismissal of the Multnomah County action.
16 TriMet argued Bricker's Exclusion had never been stayed, the 30-day
17 exclusion had since expired, and therefore, the matter was moot.
18 *See* Dkt. #16-1.   In response, Bricker filed a "Complaint and
19 Amended Writ of Review" in the Multnomah County case, restating her
20 petition for writ of review, and adding a claim for violation of
21 her First Amendment rights under 42 U.S.C. § 1983, and a claim for
22 declaratory relief under ORS § 28.010.  *See* Dkt. #1-13.   TriMet
23 then removed the case to this court.

24     In TriMet's current motion to dismiss, it relies upon and
25 renews its Motion to Dismiss filed in the Multnomah County Circuit
26 Court, where TriMet argued Bricker's petition is moot.   TriMet also
27 asserts other grounds for dismissal, each of which is discussed
28 below.  *See* Dkt. ## 16 & 16-1.

10 - FINDINGS & RECOMMENDATIONS

1                              ***MOOTNESS***

2 ***Standards***

3      This court's jurisdiction under Article III of the United

4 States Constitution "depends on the existence of a case or contro-

5 versy," and "an actual controversy must be extant at all stages of

6 review, not merely at the time the complaint is filed." *Preiser v.*

7 *Newkirk*, 422 U.S. 395, 401, 95 S. Ct. 2330, 2334, 45 L. Ed. 2d 272

8 (1975) (citations omitted).  "A claim that has lost its character

9 as a live controversy is considered moot, and thus we lack juris-

10 diction to consider it."  *Independent Living Ctr. of So. Calif.,*

11 *Inc. v. Maxwell-Jolly*, 590 F.3d 725, 727 (9th Cir. 2009) (citing

12 *Rosemere Neighborhood Ass'n v. EPA*, 581 F.3d 1169, 1172-73 (9th

13 Cir. 2009)).  A controversy remains "live" as long as the court can

14 grant some form of effective relief if the case is decided on its

15 merits.  *Id.* (citations omitted).

16      Nevertheless, in the Ninth Circuit, a party seeking dismissal

17 of a case on the ground of mootness "bears a heavy burden." *Demery*

18 *v. Arpaio*, 378 F.3d 1020, 1025 (9th Cir. 2004) (internal quotation

19 marks, citation omitted).  The United States Supreme Court has

20 described the mootness doctrine as flexible in character, noting

21 justiciability under Article III "is 'not a legal concept with a

22 fixed content or susceptible of scientific verification.'" *U.S.*

23 *Parole Comm'n v. Geraghty*, 445 U.S. 388, 400-01, 100 S. Ct. 1202,

24 1211, 63 L. Ed. 2d 479 (1980) (quoting *Poe v. Ullman*, 367 U.S. 497,

25 508, 81 S. Ct. 1752, 1759, 6 L. Ed. 2d 989 (1961)).  Some excep-

26 tions to the mootness doctrine have been carved out by the courts.

27 One of those is the circumstance where a wrong is capable of

28 repetition, yet evades review.  In such "exceptional situations,

11 - FINDINGS & RECOMMENDATIONS

1  generally only where the named plaintiff can make a reasonable
2  showing that [s]he will again be subjected to the alleged
3  illegality," the claim does not become moot. *City of Los Angeles*
4  *v. Lyons*, 461 U.S. 95, 109, 103 S. Ct. 1660, 1669, 75 L. Ed. 2d 675
5  (1983) (citation omitted).

6      "The party asserting mootness bears the burden of establishing
7  that there is no effective relief remaining that the court could
8  provide." *So. Oregon Barter Fair v. Jackson County, Or.*, 372 F.3d
9  1128, 1134 (9th Cir. 2004).

10

11 ***Discussion***

12      TriMet argues Bricker's petition for writ of review is moot
13 because she never obtained a proper stay of the exclusion order,
14 which expired of its own terms on December 30, 2011.    TriMet
15 contends that even if a stay order was entered by the Multnomah
16 County Circuit Court on December 2, 2011, the order had no effect
17 as to TriMet, which had not yet been served with a writ of review
18 in the case, and over whom the Multnomah County Circuit Court had
19 not obtained personal jurisdiction. *See* Dkt. #16-1.    Bricker
20 responds that the Circuit Court "acquired jurisdiction when [she]
21 timely filed her Petition for Writ of Review, and any defects in
22 the Petition were both curable and ultimately cured when the
23 [Circuit] Court issued the Writ in July of 2012." Dkt. #17, p. 2.

24      The petitioner is charged with the responsibility of serving
25 the writ on all opposing parties. *Thompson v. Bd. of County Comm's*
26 *of Columbia County*, 29 Or. App. 813, 818, 564 P.2d 1378, 1379
27 (1977).   Importantly, **"lack of service prevents the court from pro-**
28 **ceeding further until service occurs**; it does not deprive the court

12 - FINDINGS & RECOMMENDATIONS

1  of jurisdiction over the petition for a writ of review or over the
2  challenged decision." *Spivak v. Marriott*, 213 Or. App. 1, 9 n.6,
3  159 P.3d 1192, 1196 n.6 (2007) (emphasis added).  In other words,
4  although the court obtains *subject matter jurisdiction* when the
5  petition and undertaking are filed, the court only obtains *personal*
6  *jurisdiction* when the writ is served on the opposing parties.  As
7  the Oregon Court of Appeals explained in *Clinkscales v. City of*
8  *Lake Oswego*, 47 Or. App. 1117, 615 P.2d 1164 (1980):

9          [I]t is clear that the court is vested with
        jurisdiction over the subject matter when the
10         petitioner, within 60 days of the decision
        sought to be reviewed, files a verified peti-
11         tion [containing] the requisite allegations.
        ORS 34.030.  The court is then authorized to
12         order the writ issued by the clerk, and the
        court **obtains jurisdiction over the parties**
13         **served with a copy of the writ.**

14  *Clinkscales*, 47 Or. App. at 1120, 615 P.2d at 1167 (emphasis
15  added).

16         The court finds that any order entered by the Multnomah County
17  Circuit Court prior to July 13, 2012, for purposes of staying
18  Bricker's exclusion, had no effect on TriMet.  The circuit court
19  only obtained personal jurisdiction over TriMet when TriMet was
20  served with the Writ issued on July 13, 2012.  As a result, the
21  exclusion order went into effect on November 30, 2011, and expired
22  by its own terms on December 30, 2011.  Bricker argues the
23  "technical defect" in her petition is curable, and in fact was
24  cured when TriMet was served in July 2012.  She argues the case,
25  therefore, can proceed, with her potential remedy being
26  invalidation of the exclusion order and expungement of her record
27  with TriMet.  *See* Dkt. #17, pp. 6-9.  Bricker's failure to obtain
28  a valid stay of the exclusion order was not a "technical defect" in

13 - FINDINGS & RECOMMENDATIONS

1  her petition that can be cured.  Simply put, the Multnomah County
2  Circuit Court did not have personal jurisdiction over TriMet prior
3  to the time the exclusion order expired by its own terms.  As
4  TriMet notes, Bricker, herself, recognized that if the exclusion
5  order was not stayed, then her petition for writ of review could
6  become moot.  *See* Dkt. #1-13, ECF p. 30, Bricker's Motion for Stay
7  ("Allowing Respondent to enforce the exclusion will cause
8  Petitioner irreparable harm and may render these proceedings
9  moot.").

10     In addition, according to TriMet, there are no adverse conse-
11  quences that can accrue to Bricker from having the exclusion in
12  TriMet's records because the TriMet Code "does not provide for
13  enhanced penalties for subsequent exclusions."  Dkt. #16-1, ECF
14  p. 12 (citing TMC ch. 28, which lists "prohibited activities on
15  district property").  Thus, TriMet argues that even assuming, for
16  purposes of its motion to dismiss, that Bricker was excluded wrong-
17  fully, she no longer has a remedy because the period of exclusion
18  expired long ago, and no further adverse consequences can accrue to
19  Bricker.

20     The court finds Bricker's failure to serve TriMet timely with
21  the Writ, and then to obtain a valid stay of the exclusion order,
22  was fatal to her petition for review.  Because the exclusion order
23  has expired, there is nothing left for review.  In addition, the
24  court finds Bricker cannot make, nor has she made, any "reasonable
25  showing" that she will be subjected to the same alleged illegality
26  again.  Another exclusion on the same grounds is only likely to
27  occur if Bricker again makes what a TriMet inspector deems
28  "excessive or unnecessary noise . . . within any District Vehicle

14 - FINDINGS & RECOMMENDATIONS

1  or District Station[.]" Thus, "the prospect of future injury rests

2  on the likelihood that [Bricker] will again be . . . charged with

3  violations of the [Trimet Code]. . . ." *O'Shea v. Littleton*, 414

4  U.S. 488, 496, 94 S. Ct. 669, 676, 38 L. Ed. 2d 674 (1974).  This

5  type of "speculative contingency" is insufficient to create an

6  existing controversy for purposes of overcoming mootness. *See id.*

7  Accordingly, TriMet's motion to dismiss should be granted as to

8  Bricker's petition for writ of review.

9

10                             **SECTION 1983 CLAIM**

11     In Bricker's claim under 42 U.S.C. § 1983, she attempts to

12  relitigate, in the guise of a federal civil rights action, the very

13  issues tried to the Hearings Officer.  TriMet argues Bricker's

14  failure to obtain review of the exclusion order rendered the

15  Hearings Officer's decision final, precluding Bricker's section

16  1983 claim under Oregon and federal law.

17     "When a state agency acts in a judicial capacity to resolve

18  disputed issues of fact and law properly before it, and when the

19  parties have had an adequate opportunity to litigate those issues,

20  federal courts must give the state agency's fact-finding and legal

21  determinations the same preclusive effect to which [they] would be

22  entitled in that state's courts." *Olson v. Morris*, 188 F.3d 1082,

23  1085 (9th Cir. 1999) (citing *Univ. of Tenn. v. Elliott*, 478 U.S.

24  788, 798-99, 106 S. Ct. 3220, 3226, 92 L. Ed. 2d 635 (1986) (where

25  the Court observed that "[h]aving federal courts give preclusive

26  effect to the factfinding of state administrative tribunals also

27  serves the value of federalism"); *Guild Wineries & Distilleries v.*

28  *Whitehall Co.*, 853 F.2d 755, 758 (9th Cir. 1988)).

15 - FINDINGS & RECOMMENDATIONS

1    Bricker has made no argument that the administrative hearing
2  did not allow her a fair opportunity to litigate her constitutional
3  claims, and HO Graves's decision makes it clear that those claims
4  were, indeed, given full consideration.   There is no indication
5  that the administrative tribunal did not offer these parties an
6  adequate opportunity to litigate the issues in the case before an
7  impartial fact-finder.   The Portland City Code provided appropriate
8  and adequate procedures for the conduct of a contested adminis-
9  trative proceeding, and, as noted above, Oregon's review procedure
10  provided the parties with a means to appeal the decision.   In
11  addition, the parties were advised of their right to seek review;
12  a copy of ORS §§ 34.010 through 34.100 was appended to HO Graves's
13  decision.   *See* Dkt. #1-1, ECF pp. 9-10.   These factors demonstrate
14  that the requirements of fairness were met by the administrative
15  proceeding. *See United States v. Utah Constr. & Mining Co.*, 384
16  U.S. 394, 422, 86 S. Ct. 1545, 1560, 16 L. Ed. 2d 642 (1966)
17  (discussing fairness requirements).   The court finds the parties
18  had a full and fair opportunity to litigate the issues in the case.
19  Thus, the court must determine whether the proceeding met Oregon's
20  own criteria to require an Oregon court to give preclusive effect
21  to the Hearing Officer's decision.   *See Miller v. County of Santa*
22  *Cruz*, 39 F.3d 1030, 1033 (9th Cir. 1994).

23    In *Jackson v. City of Portland*, 2009 WL 250035 (D. Or. Feb. 3,
24  2009), Judge Haggerty of this court described the Oregon standards
25  for application of issue and claim preclusion to administrative
26  proceedings, as follows:

27              Under Oregon law, a party is prohibited
          from relitigating the same *issue* in another
28          proceeding if: (1) the issue in the two pro-

16 - FINDINGS & RECOMMENDATIONS

ceedings is identical; (2) the issue was actually litigated and was essential to a final determination on the merits in the prior proceeding; (3) the party to be precluded has had a full and fair opportunity to be heard on that issue; (4) the party to be precluded was a party or was in privity with a party in the prior proceeding; and (5) the prior proceeding was the type of proceeding to which the court would give "preclusive effect." *Nelson v. Emerald People's Util. Dist.*, 318 Or. 99, [104,] 862 P.2d 1293, 1296-97 (Or. 1993). The last factor is evaluated by looking at whether the administrative forum had formal and comprehensive procedures; whether the procedures were trustworthy; whether the application of issue preclusion would facilitate prompt, orderly and fair problem resolution; and whether the same quality of proceedings and opportunity to litigate is present in both proceedings.

Under Oregon law, a party is precluded from relitigating the same *claim* against the same defendant if the second action is based on the same factual transaction at issue in the first action, seeks an additional remedy to the one requested earlier, and the claim could have been joined in the first action. *Drews [v. EBI Cos.*, 310 Or. 134, 139-40, 795 P.2d 531,] 535 [(1990)]. "Claim preclusion does not require actual litigation of an issue of fact or law, as does issue preclusion. Nor does it require that the determination of the issue be essential to the final or end result reached in the action, claim, or proceeding." *Id.*

*Jackson*, 2009 WL 250035, at *3 (emphasis added).

Based on these criteria, whether evaluating Bricker's constitutional claims, or the issues giving rise to those claims, "the unreviewed conclusions of the . . . hearings officer preclude[] this litigation." *Id.*

Bricker argues such a conclusion "ignores Oregon authority that permits a party to pursue a remedy under 42 U.S.C. Section 1983 for the alleged violation of First Amendment rights, even in situations where the claims under state law could be deemed

17 - FINDINGS & RECOMMENDATIONS

1  untimely or moot." Dkt. #17, p. 10 (citing *Barcik v. Kubiaczyk*,
2  321 Or. 174, 195-96, 895 P.2d 765, 778 (1995); *Pangle v. Bend-*
3  *Lapine Sch. Dist.*, 169 Or. App. 376, 385-86, 10 P.3d 275, 280
4  (2000))). Bricker's argument misses the point. Bricker's section
5  1983 claim is not subject to dismissal on mootness grounds; rather,
6  her section 1983 claim is precluded by HO Graves's decision
7  affirming Bricker's exclusion, which had no timely review and thus
8  became final. *See Jackson*, *supra*.

9       For these reasons, TriMet's motion to dismiss Bricker's
10 section 1983 claim should be granted.

11

12                      ***CLAIM FOR DECLARATORY RELIEF***

13      Bricker asserts a claim for declaratory relief pursuant to ORS
14 § 28.010, *et seq.*, which is Oregon's version of the Uniform
15 Declaratory Judgments Act. In this claim, Bricker states she
16 intends to continue commuting to work on TriMet vehicles, and she
17 "has a reasonable apprehension that Tri-Met would continue to apply
18 rule TMC 28.15A(13) to [her] constitutionally protected
19 statements." Dkt. #1-13, p. 12, ¶¶ 54, 56. She argues her
20 "constitutionally protected speech is chilled because of Tri-Met's
21 enforcement of TMC 28.15A(13)," and she asks the court to find TMC
22 § 28.15(A)(13) unconstitutional, and declare that Trimet "may not
23 punish riders for constitutionally protected speech" under that
24 code section. *Id.*, pp. 12-13, ¶¶ 57-59. Bricker argues her
25 challenge to the prospective enforcement of TMC § 28.15(A)(13) is
26 properly made by means of a declaratory judgment action. Dkt. #17,
27 pp. 12-13 (citing *Baker v. City of Woodburn*, 190 Or. App. 445, 79
28 P.3d 901 (2003)).

18 - FINDINGS & RECOMMENDATIONS

1    TriMet argues there is no justiciable controversy here,

2 because Bricker's claim is based on hypothetical future events that

3 may never occur. Dkt. #19, p. 6 (citation omitted).

4    The Oregon Supreme Court has described "three related but

5 separate considerations" to determine whether a plaintiff is

6 entitled to seek relief under the Uniform Declaratory Judgments

7 Act:

8            The first consideration is that there
             must be "some injury or other impact upon a
9            legally recognized interest **beyond an abstract
             interest in the correct application of the
10           validity of a law.**" *League of Oregon Cities
             v. State*, 334 Or. 645, 658, 56 P.3d 892[, 901]
11           (2002). It is not sufficient that a party
             thinks an enactment **or a decision of a
12           government entity** to be unlawful. The
             standing requirements of ORS 28.020 require
13           that the challenged law must affect *that
             party's* rights, status, or legal relations.

14                    *    *    *

15           The second consideration is that the
16           injury must be real or probable, not hypo-
             thetical or speculative. As this court
17           explained in *TVKO v. Howland*, 335 Or. 527,
             534, 73 P.3d 905[, 908] (2003), "This court
18           consistently has held that courts cannot issue
             declaratory judgments in a vacuum; they must
19           resolve an actual or justiciable controversy.
             To be justiciable, a controversy must involve
20           a dispute based on present facts **rather than
             on contingent or hypothetical events.**" (Cita-
21           tions omitted.)

22                    *    *    *

23           The third and final consideration is that
24           the court's decision must have a practical
             effect on the rights that the plaintiff is
25           seeking to vindicate. . . . That is to say, a
             connection must exist between the rights that
26           a plaintiff seeks to vindicate and the relief
             requested. The relief that the plaintiff
27           seeks, if granted, must redress the injury
             that is the subject of the declaratory judg-
28           ment action. . . . Otherwise, the court's

19 - FINDINGS & RECOMMENDATIONS

1          decision will amount to no more than an
2          advisory opinion.

3  *Morgan v. Sisters Sch. Dist. No. 6*, ___ P.3d ___, 2013 WL 179480,
4  at *5 (Or. Jan. 17, 2013) (emphasis added; some citations omitted).
5  Absent a legally-recognized interest, a plaintiff lacks standing to
6  bring a declaratory judgment action. Further, "the plaintiff's
7  showing of that injury or other impact must not be 'too
8  speculative.'" *League of Oregon Cities v. State*, 334 Or. 645, 658,
9  56 P.3d 892, 901 (2002).

10        Bricker's declaratory judgment action fails under the *Morgan*
11 criteria. Bricker has failed to show TriMet's ongoing enforcement
12 of TMC § 28.15(A)(13) is likely to affect her "rights, status, or
13 legal relations." Her "apprehension" that she might be excluded
14 under TMC § 28.15(A)(13) in the future is speculative, and does not
15 present a dispute based on present facts. The situation might be
16 different if the facts indicated, for example, that Bricker
17 regularly made "soapbox speeches" on TriMet platforms. She then
18 might be able to show a legitimate concern regarding future
19 enforcement of the regulation against her. Under the existing
20 facts, however, her interest in the prospective application of the
21 regulation is merely abstract. In addition, the finality of the
22 Hearing Officer's decision precludes any redress related to the
23 exclusion order, itself. The court finds Bricker lacks standing to
24 bring her declaratory judgment action. Therefore, TriMet's motion
25 to dismiss that claim should be granted.
26 / / /
27 / / /
28 / / /

20 - FINDINGS & RECOMMENDATIONS

1

*CONCLUSION*

2      For the reasons discussed above, I recommend that TriMet's
3 motion to dismiss be granted, and this case be dismissed with
4 prejudice in its entirety.

5

6

*SCHEDULING ORDER*

7      These Findings and Recommendations will be referred to a
8 district judge. Objections, if any, are due by **March 18, 2013**. If
9 no objections are filed, then the Findings and Recommendations will
10 go under advisement on that date.  If objections are filed, then
11 any response is due by **April 4, 2013**.  By the earlier of the
12 response due date or the date a response is filed, the Findings and
13 Recommendations will go under advisement.

14      IT IS SO ORDERED.

15                          Dated this 28th day of February, 2013.

16

17                          /s/ Dennis J. Hubel

18                          _____

19                          Dennis James Hubel
                            Unites States Magistrate Judge

20

21

22

23

24

25

26

27

28